HUGH V. CARROLL *et al. vs.* THOMAS RYDER *et al.*

JULY 1, 1912.

PRESENT: Johnson, Parkhurst, Sweetland, and Vincent, JJ.

(1) *Reformation of Instruments.   Mutual Mistakes.*

On a bill for reformation of a deed, evidence considered, and *held* to show a mutual mistake, justifying reformation of the deed.

*(2)   Reformation of Instruments.*

On a bill for reformation of a deed, the question whether a building was actually
located within the lines of the lots intended to be conveyed is unimportant
where it appears that the removal of an unnecessary portion of the foundation
wall would bring the building as a whole within the westerly line of one lot
and also within a line drawn in continuation of that line to meet the westerly
line of the other lot. ·

*(3)   Reformation of Instruments.   Rights of Attaching Creditors.   Laches.*

Four years after the delivery of a deed conveying by mutual mistake of the
parties the wrong premises, and prior to the filing of the bill to reform the
deed, a creditor of grantor attached the lots intended to have been conveyed,
without notice of grantee's equity.

*Held*, that as grantee filed his bill within a reasonable time after obtaining
information of the mistake, he was not guilty of laches.

*Held*, further, that the rights of attaching creditors are determined by the state ·
of the title at the time of attachment and in the absence of fraud and statu-
tory regulations they only obtain the rights which the debtor had in the
property at the time, for the creditor is not in the position of a *bona fide*
purchaser.

BILL IN EQUITY for reformation of deed.   Heard on appeal
of complainant and sustained.

VINCENT, J.   This is a bill in equity brought by Hugh V.
Carroll and Thomas M. Carroll, doing business as Carroll
Brothers, against Thomas Ryder and Elizabeth Ryder, his
wife, and prays for the reformation of a certain deed given
by the respondent, Thomas Ryder, to the complainants, dated
December 14, 1906, and covering two lots of land, in the
Town of Warwick, on what is known as the "William C.
Nichols Plat."

This cause was heard in the Superior Court upon bill,
answer and proofs.   A decree was entered dismissing the bill
and the cause is now before us upon complainants' appeal
from that decree.

On December 14, 1906, Thomas Ryder, one of the respond-
ents, by a deed of warranty, conveyed to the complainants
lots 15 and 16 on the said Nichols plat.   Some months later,
it was discovered that the title to lots 15 and 16 was in
Elizabeth Ryder, the wife of Thomas, before mentioned,

whereupon Thomas and Elizabeth, on April 12, 1907, made a deed of said lots 15 and 16 to the Carrolls, which was designed to perfect the title of the Carrolls, such intention being expressed in the last named deed.

The complainants' bill sets forth that through a mutual mistake of the parties the land intended to be conveyed by the deed of December 14, 1906, from Thomas Ryder to them was erroneously described therein as lots 15 and 16, on the Nichols plat, whereas it should have been described as lots 13 and 14 on said plat.

(1) Upon lots 13 and 14 there was a building while lots 15 and 16 were without any improvements whatsoever.

From an examination of the record it is at once apparent that it was the original intention of both of the parties to the deed of December 14, 1906, that the one was to sell and the others to purchase, the two particular lots with which the building was associated, viz.: lots 13 and 14. This intention seems to us to be clearly evidenced both from the testimony and the circumstances surrounding the transaction. The testimony shows that the complainants were induced to make the purchase because they could use the building as a storehouse; that they occupied the premises, including both the building and the lots 13 and 14, from 1906, without any objection on the part of the respondents or any demand from them for rent; that the receipts given for the purchase money stated that such money was received for land and building; that since 1906, Mr. Ryder, one of the respondents, has himself used and occupied lots 15 and 16; Mr. Ryder, also stating at different times that he had sold to the Carrolls, the barn and two lots; and that it was intended that the Carrolls should get lots 13 and 14. Besides, the price paid for the property would be consistent with the purchase of lots 13 and 14 with the building thereon, but would be grossly in excess of the value of the unimproved lots 15 and 16.

Upon the Nichols plat a street is indicated running easterly and westerly, between the four lots mentioned, that is to say: lots 14 and 16 adjoin each other on the north side, and lots 13

and 15 adjoin each other on the south side, the two lots on one side being exactly opposite the two lots upon the other side.

This tract of land, so indicated as a street, does not appear to have been dedicated, devoted to, or used for highway purposes, nor does it appear that anyone has acquired any rights therein by way of easement or otherwise. It has always been regarded and treated as a part of the adjacent lots. In the deed of lots 15 and 16 from the respondent, Thomas Ryder, to the complainants, as well as in the later deed from both respondents to the complainants, which last named deed was designed to correct the errors of the first deed, the intervening land was particularly described as a part of the tract conveyed.

Some question has been raised as to the location of the building with reference to the westerly line of lot No. 13. The respondents contend that the building in question stands partly on the platted highway, partly on lot 13 and partly on lot 15, and that no part of said building rests upon lot 14.

(2)   In view of other facts in the case, we do not consider this contention one of importance. The foundation of the building upon the westerly side consists of a wall of very unusual width and of a width much greater than is required for the support of the structure. The removal of the unnecessary portion of the wall would bring the building as a whole within the westerly line of lot No. 13, and also within a line drawn in continuation of that line to meet the westerly line of lot No. 14.

We think, therefore, that the complainants are entitled to have their deed from Thomas Ryder of December 14, 1906, so reformed that it will carry out the original intention of the parties to the transaction, which was to convey to the complainants lots 13 and 14 upon said William C. Nichols plat with the improvements thereon, including also the land lying between said lots Nos. 13 and 14, as shown on said Nichols plat, and that upon the reformation of said deed as aforesaid

the said complainants should reconvey to the respondent, Elizabeth Ryder, lots 15 and 16 on said plat.

(3) After the delivery, to the complainants, of the deed of December 14, 1906, and prior to the filing of their bill, to wit, on January 29, 1910, one James Watts of Utica, in the State of New York, attached lots 13 and 14 in a suit against the respondent, Thomas Ryder. On the 27th of June, 1910, Watts was made a party respondent to said bill, upon his own motion. On February 1, 1911, he obtained judgment against Ryder for $250 and costs, in the Superior Court for the County of Kent. He now contends that the relief prayed for in the complainants' bill should not be granted to his prejudice, he having attached the lots 13 and 14 without notice of complainants' equity; that the complainants having been guilty of laches in neglecting to assert their rights for a period of four years, they are not, therefore, equitably entitled to defeat his lien upon the attached property.

An essential element of laches is knowledge. We cannot neglect that of which we have no knowledge or information. Under some circumstances the failure or omission to obtain knowledge, after such notice as might reasonably provoke inquiry, may, in itself, amount to laches.

The complainants negotiated with the respondent, Thomas Ryder, for the purchase of the storehouse building and a certain tract of land upon which such building was located. Later they received a deed of lots 15 and 16 on the William C. Nichols plat which they assumed, in the absence of any knowledge as to numbers, comprehended the land and building which had been the subject of the prior negotiations. They accordingly took possession of such building and land, and occupied it for a period of some four years without the slightest intimation or suggestion from anybody that it was not the property covered by their deed. Subsequently, the complainants learned that the lots, which they had purchased and were occupying, should have been designated as 13 and 14, instead of 15 and 16, and within a reasonable time,

after obtaining such information, they filed their bill for the reformation of the deed.

Applying the general rule, hereinbefore stated, to the above facts, we cannot find that the complainants have been guilty of such neglect as would preclude their relief in equity.

The rights of attaching creditors must be determined by the state of the title at the time the attachment was made, and in the absence of fraud and statutory regulations they only obtain the rights which the debtor had in the property at the time, for the creditor is not in the position of a *bona fide* purchaser.

The reason for this rule is that if the attachment should fail of its purpose the plaintiff would lose nothing and, having parted with no value, would be in no worse position than he was before.   See 4 Cyc. 632, 633, and cases cited.

It is true that, by the record, lots 13 and 14 stood in the name of Thomas Ryder at the time of the attachment, but it is also true that they did so stand through a mutual mistake which entitled complainants to a reformation of their deed, and to this reformation they were clearly entitled at any time, after December 14, 1906, when they should discover their difficulty and make application for its remedy.   If we should consider the attachment of Watts as a lien upon lots 13 and 14, which must be discharged before relief could be afforded to the complainants, it would, in effect, give them a relief coupled with a penalty which, under the circumstances of the case, would not be justifiable.

The decree of the Superior Court dismissing the bill is reversed and the cause is remanded to that court for further proceedings in accordance with this opinion.

*Hugh J. Carroll and Lester T. Murphy*, for complainants.

*Quinn & Kernan*, for respondent Ryder.

*Edward C. Stiness and Frederick W. O'Connell*, for respondent Watts.